### MANAGEMENT & TECHNICAL CONSULTANTS S.A., Plaintiff-Appellee,

v.

### PARSONS–JURDEN INTERNATIONAL CORP., Defendant-Appellant.

Nos. 85–5930, 85–6587.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1987.

Decided July 8, 1987.

William D. Temko, Los Angeles, Cal., for plaintiff-appellee.

Fred G. Bennett, Los Angeles, Cal., for defendant-appellant.

Before ANDERSON, SKOPIL, and REINHARDT, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Parsons-Jurden International appeals two petitions by Management & Technical Consultants made in the district court to enforce a foreign arbitral award. The district court granted the petitions and Parsons-Jurden contends that the arbitrators lacked authority to make the award in that they decided subject matter not within the scope of the agreement to arbitrate. We affirm the judgment of the district court.

Management and Technical Consultants ("MTC") is a Liberian corporation with its principal place of business in Monrovia, Liberia. Parsons-Jurden International Corp. ("P-J") is a corporation organized under the laws of the State of Nevada, U.S.A., with its primary place of business in Pasadena, California, U.S.A. In December, 1972 P-J and MTC entered into an agreement whereby MTC was to assist P-J in obtaining a contract or contracts with the Government of Iran to develop mining facilities at the Sar Cheshmeh copper mines in Iran. The agreement provided that if P-J was awarded such a contract, P-J would pay MTC five percent of P-J's "gross billings" to the Iranian Sar Cheshmeh Copper Mining Company (Sar Cheshmeh). On July 3, 1973, P-J entered into a contract to furnish materials for the mining operation. The amount of the contract was to be either 2.35% of the project's actual final costs *or* as calculated by the projected costs plus an additional fee for services rendered at the mine, at Sar Cheshmeh's option.

After the materials were furnished, Sar Cheshmeh chose the latter method of calculation and under it paid P-J $7,402,500.00. MTC was awarded a portion of this payment pursuant to the December, 1972 P-J agreement with MTC. However, by 1974 the parties disagreed over the meaning of the term "gross billings" in the December, 1972 agreement. P-J contended the term meant only the compensation for the additional fees it was paid, whereas MTC maintained the term included all payments made to P-J.

In light of this disagreement, P-J and MTC entered into a subsequent superseding letter agreement on March 22, 1974, in which P-J agreed to pay MTC an additional amount as "full settlement" of the disputed payments. The March 22 letter agreement also contained the following proviso to the "full settlement" which the parties reached:

[P-J] hereby agree[s] that should its gross billings to [Sar Cheshmeh] exceed a gross total of [$350 million] [MTC] shall become entitled to receive from [P-J] additional compensation. In such event and at such time [P-J] will negoti-

ate the terms and conditions of such payments to [*MTC*].

The letter agreement also included an arbitration clause which stated:

This Letter of Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Bermuda. Any dispute arising between us concerning this Letter of Agreement which cannot be settled amicably, shall be resolved by arbitration to be held by a three-man arbitration panel to be appointed in accordance with the rules of arbitration of the International Chamber of Commerce of Paris. The site of the arbitration shall be in Hamilton, Bermuda.

In the years following the letter agreement, disputes over the total "gross billings" to Sar Cheshmeh continued. Finally, in 1982, *MTC* initiated arbitration against *P-J* under the arbitration clause contained in the letter agreement. *MTC* contended the gross billings *P-J* received exceeded $350 million dollars and that *MTC* was not receiving additional compensation as required by the agreement. *P-J* argued that while it agreed the arbitrators had authority to decide whether the gross billings exceeded $350 million, once that decision was made the arbitral panel lacked the authority to set the amount of additional compensation due *MTC* since this amount was to be determined "at such time [*P-J*] will negotiate the terms and conditions of such payments to [*MTC*]." In short, *P-J* argued the arbitration decision was limited to determining whether *P-J* had exceeded $350 million in gross billings, (thereby requiring the parties to negotiate further to set the amount owed *MTC*), and did not include determining what actual amount *MTC* was to be paid.

Proceedings with the arbiters were held in Bermuda in 1983, with *P-J* and *MTC* filing pleadings, legal memoranda and sworn witness statements on the arbitrability issue. Oral argument was also present-

ed. On June 14, 1984, the arbiters issued an award pursuant to the 1974 letter agreement requiring *P-J* to pay *MTC* $1.85 million plus interest as the amount due for the gross billings to Sar Cheshmeh. However, the reasons for the award were not made a part of the written arbiters' decision. Later, in light of the $1.85 million award, the arbiters also awarded *MTC* $414,686.00 as costs ($402,000.00 costs plus $12,686.00 in fees) for obtaining and confirming the prior award.

In 1985, *MTC* filed in district court a "Petition and Motion for Recognition, Confirmation and Enforcement of Foreign Arbitral Award" under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201–208, to enforce the $1.85 million award. *P-J* opposed the petition on the ground that the arbiters exceeded their authority in making an award which was to be determined by negotiation between the parties. The district court granted the petition, affirming the $1.85 million award plus interest from the date the arbitration award was entered. Additionally, *MTC* filed a similar petition for $414,686.00 to enforce the arbitrators' award of costs. This petition was also granted.

*P-J* appeals both the district court's judgment to enforce the $1.85 million award and the $414,686.00 award of costs. While each was appealed separately, they have been consolidated here. Jurisdiction rested under 9 U.S.C. § 203 in the district court and rests under 28 U.S.C. § 1291 in this court.

The language at issue in the letter agreement states that "[a]ny dispute ... which cannot be settled amicably, shall be resolved by arbitration...." Since this language concerns the enforcement of an agreement to arbitrate, it is clear the letter agreement falls within the scope of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"). *See* 9 U.S.C. § 202.[1] Under the Convention, an arbiter's award can

---

1. 9 U.S.C. § 202 provides:

An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as

commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relation-

be vacated only on the grounds specified in the Convention. *See* 9 U.S.C. § 207;[2] *Fotochrome Inc. v. Copal Co.*, 517 F.2d 512, 518 (2d Cir.1975). In interpreting the grounds specified, it is generally recognized that the Convention tracks the Federal Arbitration Act, 9 U.S.C. § 1, *et seq. Compare* 9 U.S.C. § 201 with 9 U.S.C. § 1 *et seq. See Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie Du Papier (RAKATA)*, 508 F.2d 969, 976 (2d Cir.1974).

*P–J* argues the arbitral's award was erroneous because it included a subject, i.e., the additional compensation to be paid *MTC*, not within the letter agreement to submit to arbitration. This ground of error is enumerated in the Convention under ARTICLE V, § 1(c) which provides:

> Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>
> .   .   .   .   .
>
> ... [t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contain decisions on matters submitted to arbitration may be recognized and enforced....

9 U.S.C. § 201.

Federal arbitration law has established a presumption that an arbitral body has acted within its powers. *Howard Elec. and Mechanical Co. v. Frank Briscoe Co.*, 754 F.2d 847, 850 (9th Cir.1985). This presump-

tion exists to effectuate the " 'liberal federal policy favoring arbitration agreements.' " *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)); *Parsons & Whittemore*, 508 F.2d at 976. The policy favoring arbitration "applies with special force in the field of international commerce." *Mitsubishi*, 105 S.Ct. at 3356–57. *See also Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 847 (2d Cir.1987) (recognizing added presumption). We review *de novo* a contention that the subject matter of the arbitration lies outside the scope of a contract, since the arbitrability of a dispute concerns contract interpretation and only those disputes which a party has agreed to submit to arbitration may be so resolved. *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463 (9th Cir.1983). However, we construe arbitral authority broadly to comport with the enforcement-facilitating thrust of the Convention and the policy favoring arbitration. *Parsons & Whittemore*, 508 F.2d at 976.

Here, the parties agree the arbiters had authority to determine whether the gross billings exceeded $350 million. They disagree on whether the arbiters had the further authority to determine the amount of additional compensation due. The letter agreement indicates that "[a]ny dispute" which could not be "settled amicably" would be resolved by arbitration. We construe the word "any" broadly. *Cf. Mediterranean Enterprises*, 708 F.2d at 1463 ("any dispute" read narrowly where limiting language of "arising hereunder" immediately followed). An agreement to arbitrate "any dispute" without strong limiting

ship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

**2.** 9 U.S.C. § 207 provides:

Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

or excepting language immediately following it logically includes not only the dispute, but the consequences naturally flowing from it—here, the amount of additional compensation. By agreeing to arbitrate the decision of whether there had been $350 million in sales and by using such broad language in the letter agreement, we find the parties also conferred arbitral authority to determine the amount of additional compensation due *MTC*. *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941 (any dispute concerning the scope of arbitral issues under the Arbitration Act should be resolved in favor of arbitration).

The second issue appealed, which concerns the award of costs, is a simple one. Since we find the arbiters' authority to reach the main decision was within the scope of the letter agreement, it follows the arbiters also had the authority to award costs and fees for obtaining the arbitral decision. *See Parsons & Whittemore*, 508 F.2d at 977 (an award for costs does not require express authority in the arbitration clause under the guidelines set by the International Chamber of Commerce).

The judgment of the district court on the petition to enforce the foreign arbitral award and the award of costs and fees is affirmed.

AFFIRMED.