The MINISTRY OF DEFENSE AND SUPPORT FOR THE ARMED FORCES OF THE ISLAMIC REPUBLIC OF IRAN, as Successor in Interest to the Ministry of War of the Government of Iran, Petitioner,

v.

CUBIC DEFENSE SYSTEMS, INC., as Successor in Interest to Cubic International Sales Corporation, Respondent.

Civ. No. 98–1165–B.

United States District Court, S.D. California.

Dec. 7, 1998.

Mina Almassi, Cupertino, California, Anthony J. Van Patten, Los Angeles, California, for petitioner.

C. Stephen Heard, Jr., New York City, Paul C. Workman, Los Angeles, California, for respondent.

### ORDER GRANTING PETITION TO CONFIRM FOREIGN ARBITRAL AWARD AND DENYING CROSS–MOTION TO VACATE THE MAY 5, 1997 ICC ARBITRATION AWARD

BREWSTER, Senior District Judge.

Petitioner, the Ministry of Defense and Support of the Armed Forces of the Islamic Republic of Iran ("Iran"), filed a petition on June 25, 1998 for an Order Confirming a Foreign Arbitral Award against Respondent, Cubic Defense Systems, Inc. ("Cubic"). Cubic filed a cross-motion on October 9, 1998 to Vacate the May 5, 1997 Court of Arbitration of the International Chamber of Commerce ("ICC") Award ("Award"). Cubic contends that the ICC Award exceeds the scope of the terms of the submission to arbitration and ignores the terms of the Parties' Contracts. Cubic also claims that it was not given a meaningful opportunity to present its case. The issue before this Court is whether Cubic's claims preclude this Court from confirming the ICC Award.

### I. FACTUAL AND PROCEDURAL BACKGROUND

A brief review of the events leading up to this dispute is in order. On October 23, 1977, the Parties entered into two written contracts for the sale ("Sales Contract") and service ("Service Contract") of an Air Combat Maneuvering Range for use by the Iranian Air Force. The Contracts provided for progress payments upon completion of specified portions of work, pursuant to which Iran paid Cubic $12,608,519 under the Sales Contract and $302,857 under the Service Contract as of October 4, 1978.

In late 1978 and early 1979, political unrest and revolution developed in Iran, resulting in the Shah's departure from Iran and the return from exile of Ayatollah Ruhollah Khomeini.[1]  Iran alleges that Cubic breached both Contracts by removing its service specialists from Iran and by failing to deliver the military system and equipment. Cubic alleges that in February and March of 1979, Cubic sent Iran notices of completion of Milestone 3 of the Sales Contract and demanded payment of $5,403,651. According to Cubic, Iran did not respond to these notices, accept delivery, or make payment. Furthermore, Iran claims that after the Iranian Revolution in 1979, Cubic sold the goods to a third party, retained the sale proceeds, and failed to notify Iran of the sale. Cubic, however, alleges that it notified Iran of the possibility of resale on August 3, 1979.

On January 19, 1982, Iran filed a claim against Cubic with the Iran–United States Claims Tribunal at the Hague. On April 28, 1987, the Iran–U.S. Claims Tribunal issued an Order stating that it lacked jurisdiction to hear the matter.

Pursuant to the Sales and Service Contracts, Iran filed a Request for Arbitration before the ICC on September 24, 1991. Article 15 of the Sales Contract and Article 18 of the Service Contract both state that "[a]ny controversy, dispute or claim arising out of or relating to [these contracts] or breach thereof shall be settled by arbitration in the City of Zurich, Switzerland, in accordance with the laws of the Government of Iran in effect as of the date of [these contracts]." Iran and Cubic appointed their respective Arbitrators in 1992, and the ICC appointed a Panel Chair on May 6, 1993. On July 14, 1993 the Parties attended a pre-hearing conference at which the Terms of Reference for the Arbitration were decided.

On August 11, 1993, the ICC ordered bifurcation of the dispute, deferring the issue of quantification of the claim and counterclaim. Thus, on June 13–15, 1994, a hearing was held on all issues except for the quantification pursuant to the August 11, 1993 Order. On April 6, 1995, the ICC Tribunal issued an Order finding that Iran's claim for reimbursement and Cubic's counterclaim were not time-barred by the Iranian statute of limitations and that the bifurcation of the proceedings was no longer applicable.

---

1. For a complete account of the political unrest in Iran during this period, *see Ministry of Defense of the Islamic Republic of Iran v. Gould Inc.,* 887 F.2d 1357, 1358–60 (9th Cir.1989).

Another hearing was held on November 7–9, 1995. On December 1, 1995 the ICC ordered further briefing by the Parties. On May 5, 1997, the ICC issued its Final Award:

> Cubic Defense System[s], Inc .... shall pay the Islamic Republic of Iran ... the amount of U.S. Dollars 2,808,519.__, together with (simple) interest on such amount at the rate of 12% per annum as from September 24, 1991 until the date of this Final Award.
>
> .  .  .  .  .
>
> [Cubic] shall reimburse [Iran] the amount of USD 60,000.__ advanced by [Iran] in excess of its 50% share in the Parties' cost deposits.

(Award § 21). The ruling was issued by the Panel Chair, with dissents from both Arbitrators. In sum, one Arbitrator dissents on the ground that Iran is entitled to more relief than awarded and the other Arbitrator dissents in judgment finding for Cubic. Iran filed its petition for an order confirming this Award on June 25, 1998. Cubic cross-motioned for an order vacating this Award on October 9, 1998.

## II. DISCUSSION

### A. Standard of Law

■ The Court is asked to confirm the ICC Award pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitration Awards ("Convention"), opened for signature June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3, *reprinted in* 9 U.S.C. §§ 201–208. The United States became a party to the Convention in 1970, and Congress soon after enacted legislation implementing the provisions of the Convention into domestic law, codified as Chapter II of the Federal Arbitration Act ("FAA"), Pub.L. 91–368, 84 Stat. 692 (1970) (codified at 9 U.S.C. §§ 201–208). A district court's "review of a foreign arbitration award is quite circumscribed." *Ministry of Defense of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir.1992). There is a general pro-enforcement bias under the Convention. *See Id.; see also Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519–20 & n.

15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). Upon application for an order confirming the award, the "district court has little discretion: 'The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.'" *Ministry of Defense*, 969 F.2d at 770 (citing 9 U.S.C. § 207).

■ The grounds for refusing to recognize or enforce an arbitral award include:

> (a) The parties to the agreement ... were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or the arbitration proceedings or was otherwise unable to present [his or her] case; or
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contain decisions on matters submitted to arbitration may be recognized and enforced;.... [2]

Convention, art. V(1). In particular, courts should narrowly construe Article V(1)(c) in accordance with the Convention's general pro-enforcement bias. *See Ministry of Defense*, 969 F.2d at 770.

■ Section 10 of the FAA and case law addressing domestic arbitration set forth grounds upon which a court may refuse to confirm an arbitration award. These grounds, however, are not applicable to confirmation under the Convention. The statute implementing the Convention states that a "court shall confirm the award unless it finds one of the grounds for refusal ... specified

---

**2.** Article V(1)(d)–(e) and Article V(2) of the Convention also set forth grounds upon which a court may refuse to recognize or enforce a foreign arbitral award. Cubic, however, does not make claims pursuant to these provisions of the Convention and therefore these grounds are not before this Court.

in the said Convention." 9 U.S.C. § 207. Thus, other provisions regarding arbitration are not applicable to petitions requesting confirmation of an arbitration award under the Convention. *See Ministry of Defense*, 969 F.2d at 770 (limiting discretion of district court to grounds to refusal specified in the Convention); *Management & Technical Consultants S.A. v. Parsons–Jurden Int'l Corp.*, 820 F.2d 1531, 1533–34 (9th Cir.1987) ("Under the Convention, an arbiter's award can be vacated only on the grounds specified in the Convention."); *see also Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1446 (11th Cir.1998) (finding that "the Convention's enumeration of defenses is exclusive"); *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 20 (2d Cir.1997) ("[T]he grounds for relief enumerated in Article V of the Convention are the only grounds available for setting aside an arbitral award."); *M & C Corp. v. Erwin Behr GmbH & Co.*, 87 F.3d 844, 851 (6th Cir.1996) ("Article V of the Convention lists the exclusive grounds justifying refusal to recognize an arbitral award.").

### B. Cubic's Opposition to Confirmation of the Arbitration Award

#### 1. Article V(1)(c)

Cubic first contends that the ICC Award violates Article V(1)(c) of the Convention because it "deals with a difference not contemplated by or not falling within the terms of the submission to arbitration" and it "contains decisions on matters beyond the scope of the submission to arbitration."[3] Cubic also alleges that the award violates Article V(1)(c) because it ignores the terms of the Parties' Contracts. Thus, Cubic argues that the "Terms of Reference constitute the jurisdictional mandate of an arbitral panel, and any decision which exceeds the scope of that jurisdictional reference is improper."

Specifically, Cubic argues that the Tribunal decided issues not submitted by the Parties and issued a ruling based upon legal theories not contemplated by and/or asserted by the Parties. The legal theories and conclusions Cubic takes issue with are: (1) the "conclusion that the Parties agreed in 1979 to discontinue the Contracts at least for the time being, i.e., until the results of Cubic's attempt to resell the System would be known" (Award § 10.11); (2) the conclusion that there was "an implicit agreement for the postponement of the maturity date of any such claims until Cubic had resold the equipment or declared its inability to resell" (Procedural Order No. 6 § 1.3); (3) the conclusion that there was "a factual termination of the Contracts at the request of Iran" (Award § 11.22); and, (4) the finding that it can be implied from the Termination for Convenience Clause that "Cubic shall credit Iran with ... products manufactured for Iran prior to the termination of the Contracts." (Award § 13.6).

Cubic's objections are misguided. First, the Terms of Reference allow the Arbitrators leeway in resolving the conflict that the Parties presented to them. Cubic cites specific questions framed by the Terms of Reference and claims that the ICC Award's deviations from those particular questions constitutes a deviation from the Terms. However, as Iran points out, the questions posed for the Arbitrators were presented in the following manner in the Terms of Reference:

> The issues to be determined shall be those resulting from the Parties' submissions and which are relevant to the adjudication of the Parties' respective claims and defenses. In particular, *the Arbitral Tribunal may have to consider the following issues (but not necessarily all of these or only these,* and not necessarily in the following order) . . . .

(Terms of Reference § 4) (emphasis added). The Terms of Reference then proceed to list twelve issues that *may* be considered in the adjudication of the Parties' claims and defenses. The Arbitrators were not, however, explicitly required to consider all of these issues in resolving this contractual dispute. The Arbitrators were also not limited to the issues listed, but could consider additional issues in resolving this dispute. Furthermore, the Award is within the parameters of those twelve issues, even if the legal theories

---

**3.** Cubic also contends that the Award violates 9 U.S.C. § 10 of the FAA. As explained by this Court, § 10 of the FAA does not apply to claims brought under the Convention.

applied are different from those presented in the Parties' pleadings. Thus, based only on an evaluation of the Terms of Reference, the use of legal theories not presented by the Parties is acceptable under the Terms of Reference.

■ Second, Cubic's claim that the use of legal theories not presented by the Parties precludes confirmation of the Award was rejected by the Ninth Circuit. *See Ministry of Defense,* 969 F.2d at 771. Under the Convention, a court is to determine "whether the award exceeds the scope of the [arbitration agreement], not whether the award exceeds the scope of the parties' pleadings." *Id.* Respondents in *Ministry of Defense* objected to confirmation of that award "because the award [was] not based on the same legal theory as that stated in the pleadings." The court found that the subject matter of respondent's claim was "obvious[ly]" the contracts between the parties and to the extent the "award resolves the claims and counterclaims connected with the two contracts it . . . does not exceed the scope of the submission to arbitration." *Id.* Comparing *Ministry of Defense* to this case, the Court finds that the subject matter of this dispute is the Service and Sales Contracts between Cubic and Iran. The ICC Award resolves the Parties' claims arising from these Contracts and the fact that the Award is not based on the same legal theories as stated in the pleadings cannot be a basis for refusing to confirm it.

■ Cubic also disputes the Tribunal's reference to the Principles of International Commercial Contracts published in 1994 by the Unidroit Institute ("UNIDROIT Principles") and the Tribunal's references to principles of fairness such as good faith and fair dealing. Cubic claims that reference to such international and equitable principles also violates Article V(1)(c) because this law exceeds the scope of the Terms of Reference. The reference to the UNIDROIT Principles does not exceed the scope of the Terms of Reference. One of the issues presented to the Tribunal was whether general principles

of international law apply to this dispute. That Cubic disagrees with the Tribunal's response to the question posed by the Parties is not a reason to find that the Tribunal addressed issues beyond the scope of the Terms of Reference. The same is true for Cubic's assertions with regard to the Tribunal's references to equitable principles of contract law.[4]

As stated earlier, this Court's discretion in reviewing a foreign arbitration award is quite circumscribed. *See Ministry of Defense,* 969 F.2d at 770. The Tribunal's reference to and application of the UNIDROIT Principles and principles such as good faith and fair dealing do not violate Article V(1)(c). The Tribunal applied these principles to differences contemplated by and falling within the terms of the submission to arbitration and therefore the Award does not violate Article V(1)(c).

**2. Article V(1)(a)**

■ Article V(1)(a) provides that a court may refuse to confirm an arbitral award if an agreement in writing, including an arbitral clause in a contract or an arbitration agreement, is not valid under the law to which the parties have subjected it. Cubic appears to be arguing that the four theories of the Tribunal that Cubic contests constitute oral amendments to the Contracts' arbitration clauses and the Terms of Reference. Cubic contends that these oral amendments violate the Convention's requirement that the agreements be in writing. Cubic's construction of the Award and the Convention is strained.

The arbitration clause in the Contracts and the Terms of Reference validly present the Tribunal with the task of resolving the dispute over the Contracts between Iran and Cubic resulting from the unusual circumstances surrounding the 1979 Iranian Revolution. This Court cannot refuse to confirm the Award simply because the legal theories and conclusions presented in the Award differ from those contemplated by the Parties in their pleadings. Legal theories used by

---

4. Cubic relies on *Beacon Journal Publ'g v. Akron Newspaper Guild,* 114 F.3d 596, 600 (6th Cir. 1997), for its contention that arbitration awards based on fairness and equity instead of the terms of the agreement should be overturned. Even if this case were binding on this Court, the case resolves a domestic arbitration dispute arising from a collective bargaining agreement and is therefore not applicable to the confirmation of arbitral awards under the Convention. *See Ministry of Defense,* 969 F.2d at 770; *see also M & C Corp.,* 87 F.3d at 851 (6th Cir.1996).

adjudicators to resolve contract disputes are not considered oral amendments to the contract or the arbitration agreement. Article V(1)(a) of the Convention does not present this Court with grounds for refusing to confirm the Award.

### 3. Article V(1)(b)

■ Article V(1)(b) allows a court to refuse confirmation of an arbitral award if the "party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present [his or her] case." Cubic contends that it was "denied a meaningful opportunity to present its case" because: (1) Iran shifted its factual and legal theories throughout the proceedings; (2) the Tribunal issued interim decisions regarding bifurcation of the proceedings; and (3) the legal theories and remedies articulated in the Award were not previously presented. Even if these allegations were true, these claims do not rise to the level required by Article V(1)(b) to justify a refusal by this Court to confirm the Award. Cubic's active participation in the entire process demonstrates notification of the proceedings, therefore Cubic presumably relies on the latter part of Article V(1)(b) to justify its claim. However, Cubic was also "otherwise able to present [its] case." Two hearings were held. Cubic also had several opportunities for briefing. Cubic had its "day in court" and had ample opportunity to present its interpretation of the facts and its legal theories to the Tribunal. Therefore, the Award does not violate Article V(1)(b).

### III. CONCLUSION

The Court hereby GRANTS Iran's Petition for Confirmation of the Foreign Arbitral Award and, subsequently, the Court hereby DENIES Cubic's Cross–Motion to Vacate the May 5, 1997 ICC Arbitration Award.

IT IS SO ORDERED.