**THE MINISTRY OF DEFENSE AND SUPPORT FOR THE ARMED FORCES OF THE ISLAMIC REPUBLIC OF IRAN, Petitioner,**

v.

**CUBIC DEFENSE SYSTEMS, INC., Respondent.**

**No. CIV. 98CV1165(RMB).**

United States District Court, S.D. California.

Nov. 26, 2002.

Mina Almassi, Los Altos, CA, Anthony J. Van Patten, Los Angeles, CA, for plaintiff.

Steven R. Perles, Washington, DC for Stephen M. Flatow, defendant.

Steven S. Gohari, Long Beach, CA, for Dariush Elahi, defendant.

**ORDER GRANTING PETITIONER'S MOTION FOR JUDICIAL DETERMINATION THAT ITS JUDGMENT AGAINST CUBIC DEFENSE SYSTEMS IS IMMUNE FROM ATTACHMENT OR EXECUTION BY STEPHEN M. FLATOW [No. 81] AND DENYING PETITIONER'S MOTION FOR JUDICIAL DETERMINATION THAT ITS JUDGMENT AGAINST CUBIC DEFENSE SYSTEMS IS IMMUNE FROM ATTACHMENT OR EXECUTION BY DARIUSH ELAHI [No. 83].**

BREWSTER, Senior District Judge.

For the reasons analyzed here below, the Court GRANTS the petitioner's "Mo-

tion for Judicial Determination That its Judgment Against Cubic Defense Systems is Immune from Attachment or Execution by Stephen M. Flatow," and DENIES the petitioner's "Motion for Judicial Determination That its Judgment Against Cubic Defense Systems is Immune from Attachment or Execution by Dariush Elahi."

## I. ISSUE

▮ The instant motions raise the issue whether this Court's judgment of December 8, 1998 against Cubic Defense Systems, Inc. is immune from attachment or execution by liens or garnishment. The burden of proof on this issue rests on the petitioner. *See, e.g., International Insurance Co. v. Caja Nacional De Ahorro Y Seguro*, 293 F.3d 392, 397 (7th Cir.2002) (stating that "[t]he ultimate burden of proving immunity rests with the foreign state.").

## II. BRIEF PROCEDURAL HISTORY

The matter now before the Court arises out of a petition to confirm an International Chamber of Commerce ("ICC") arbitration award in favor of the Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran ("the MOD") against Cubic Defense Systems, Inc. ("Cubic"). This Court entered judgment in favor of the MOD confirming the award on December 8, 1998. *See Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, 29 F.Supp.2d 1168 (S.D.Cal.1998). Subsequently, Cubic filed a supersedeas bond in the amount of $5,400,000 and appealed the decision to the Ninth Circuit, where it is now pending. After this Court confirmed the ICC award, Stephen Flatow and Dariush Elahi—judgment creditors of Iran—filed notices of lien against the MOD's judgment against Cubic ("the MOD's judgment"). The instant motions, filed on September 13, 2002, seek a judicial determination that the Mod's judgment is immune from attachment or execution by Flatow and Elahi.

## III. FACTUAL BACKGROUND

### (A) Stephen Flatow

Stephen Flatow's daughter was killed in an Iranian-sponsored terrorist attack in the Gaza Strip near Israel. Flatow filed suit against Iran in the U.S. District Court for the District of Columbia, pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("Antiterrorism Act"). In March 1998, he obtained a default judgment against Iran for compensatory damages and punitive damages totaling $247,513,220. *See Flatow v. Islamic Republic of Iran*, 999 F.Supp. 1 (D.D.C.1998). Pursuant to 28 U.S.C. § 1963, Mr. Flatow registered his judgment in the Eastern District of Virginia in September 1998.

On December 8, 1998, this Court issued a judgment confirming a $2,808,519 ICC arbitration award in favor of the MOD against Cubic, arising out of Cubic's breach of a military sales contract in 1978. Thirteen days later, Flatow obtained a Summons in Garnishment from the Eastern District of Virginia, directing Cubic to relinquish to him any and all Iranian assets in its possession. He then petitioned this Court to intervene post-judgment in the confirmation action between the MOD and Cubic. This Court's denial of Flatow's motion to intervene, issued on April 6, 1999, is currently on appeal to the Ninth Circuit. On April 29, 1999, Flatow filed a notice of lien in this Court, seeking to garnish the debt owed to the MOD by Cubic.

In October 2000, President Clinton signed the Trafficking Victims Protection Act of 2000 ("Victims Protection Act"), a law intended to allow victims of state-sponsored terrorism to recover damages owed to them by foreign nations. Under the law, the United States uses the rental

proceeds of blocked foreign assets to pay compensatory damages to certain holders of judgments [1] issued pursuant to the Anti-terrorism Act. The law affords those holders who qualify two options:

(A) Receive an amount equal to 110 % of one's compensatory damages in exchange for relinquishing the right to recover *both* compensatory and punitive damages under the judgment; or

(B) Receive an amount equal to 100 % of the compensatory damages component of the judgment, but *retain* the right to recover punitive damages.

*See* Victims Protection Act at §§ 2002(a)(1)(A), 2002(a)(1)(B). Mr. Flatow chose Option (B) and received a lump sum payment of over $26,000,000 from the United States in January 2001. In June 2001, the MOD petitioned the Ninth Circuit to dismiss Flatow's appeal of the denial of his Motion to Intervene on the ground that, by exercising Option (B), Flatow relinquished his right to attach the MOD's judgment against Cubic. In December 2001, the Ninth Circuit stayed Flatow's appeal until this Court resolves the issue whether the MOD's judgment is immune from attachment. The MOD filed the instant "Motion for a Judicial Determination that Its Judgment Against Cubic Defense Systems is Immune from Attachment or Execution by Stephen M. Flatow" on September 13, 2002.

### (B) Dariush Elahi

Dariush Elahi's brother was assassinated by Iranian agents in Paris in 1990. Elahi filed suit in the District of Columbia' and, on December 20, 2000, obtained a default judgment for $11,740,035 in compensatory damages and $300,000,000 in punitive damages. *See Elahi v. Islamic Republic of Iran,* 124 F.Supp.2d 97, 115

(2000). Elahi registered the judgment in the Southern District of California and filed a notice of lien on November 1, 2001, seeking to garnish the judgment debt owed to MOD by Cubic. The MOD filed a "Motion for a Judicial Determination that Its Judgment Against Cubic Defense Systems is Immune from Attachment or Execution by Dariush Elahi" on September 13, 2002.

## IV. ANALYSIS

The MOD offers five arguments in support of its Motions against Flatow and Elahi. They are as follows: (A) Neither Iran nor MOD may be held liable for punitive damages under Section 1606 of the Foreign Sovereign Immunities Act (28 U.S.C. § 1602 *et seq.*) ("FSIA"); (B) Flatow has relinquished his right to attach the judgment by exercising Option (a)(1)(B) of Section 2002 of the Victims Protection Act of 2000; (C) the judgment is immune from attachment because it is property of military character pursuant to Section 1611(b)(2) of the FSIA; (D) the judgment is immune because it is the property of a central bank under Section 1611(b)(1) of the FSIA; and (E) the judgment is immune from attachment because the President has waived the attachment provisions of Section 1610(f) (1)(a) of the FSIA. The Court addresses each argument in turn, in Subheadings A–E.

### (A) Whether the MOD is Liable for Punitive Damages

██ The MOD first maintains that it cannot be held liable for punitive damages under 28 U.S.C. § 1606, which governs the extent of liability for foreign sovereigns. This argument is a collateral attack on the underlying judgments issued

---

1. Only victims of state-sponsored terrorism who obtained judgments prior to July 20, 2000 are entitled to compensation under the Victims Protection Act. *See* Victims Protection Act § 2002(a)(2). Thus, Flatow qualifies for compensation but Elahi does not.

in the District of Columbia. The MOD proffered no defense in that forum, where both Flatow and Elahi obtained default judgments against Iran that include punitive damages awards in the hundreds of millions of dollars. *See Flatow,* 999 F.Supp. at 34; *Elahi,* 124 F.Supp.2d at 115. Those judgments—which the MOD declined to appeal—were registered in the Southern District of California pursuant to 28 U.S.C. § 1963. As such, they warrant the same treatment as a judgment entered directly by this Court. *See* 28 U.S.C. § 1963.

 The MOD had a full and fair opportunity to litigate the punitive damages issue in the District of Columbia. It ignored that opportunity. Principles of comity and *res judicata* counsel against affording the MOD another "bite at the apple." *See, e.g., Indian Head Nat'l Bank v. Brunelle,* 689 F.2d 245, 249 (deferring to the court of rendition on application for relief from default judgment); *Universal Display & Sign Co. v. Del Mar News Agency,* 541 F.2d 142, 144 (3d Cir. 1976) (stating that a default judgment may not be collaterally attacked where the parties had a previous opportunity to adjudicate). Furthermore, although "[a] court of registration has jurisdiction to entertain motions challenging the underlying judgment," *Federal Deposit Ins. Corp. v. Aaronian,* 93 F.3d 636, 639 (9th Cir. 1996), the Ninth Circuit has stated that "such motions are disfavored." *Id.* As a

general rule, the rendering court is the proper forum in which to seek relief from the underlying judgment. *See id. See also Brunelle,* 689 F.2d at 249 (stating that "comity among the federal district courts is furthered if the registering court refers the question of relief to the court which ordinarily entered the judgment."). The only clear exception to the rule involves those cases that concern challenges to the rendering court's jurisdiction. *See, e.g., Covington Industries, Inc., v. Resintex A.G.,* 629 F.2d 730, 734 (2d Cir.1980); *Mu–Petco Shipping Co. v. Divesco, Inc.,* 101 F.R.D. 753, 755 (S.D.Miss.1984) (stating that "[o]nly jurisdictional issues may be raised to collaterally attack a judgment."). The MOD's argument is grounded in statutory interpretation. It is not jurisdictional in nature. Therefore, the Court now adheres to the general rule and declines the MOD's invitation to review the punitive damages awards.[2]

**(B) Whether Flatow has Waived his Right to Attach the MOD's judgment**

As the Court noted previously,[3] Flatow waived the right to collect his compensatory damages in exchange for a lump-sum payment of more than $26,000,000 from the United States, but retained a general right to satisfy his punitive damages award through attachment, execution, etc. That general right, however, is limited by the three specific exemptions listed in Section 2002(a)(2)(D) of the Victim's Protection

**2.** The issues of comity and efficient judicial administration aside, the Court finds the substance of the MOD's argument to be wholly unpersuasive. The MOD maintains that an October 28, 2000 amendment to 28 U.S.C. § 1606 ("Extent of Liability of Foreign States") repealed legislation that permitted punitive damages against a foreign state. *See* Pet'r's Br. at 8. Flatow obtained his judgment against Iran in 1998, two years *prior to* the repeal upon which the MOD relies. Absent clear evidence that Congress intended the

amendment to have retroactive effect, this subsequent change in law has no effect on the validity of Flatow's judgment. *See Landgraf v. USI Film Products,* 511 U.S. 244, 272, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)(presumption against retroactivity applies absent clear evidence of Congressional intent to the contrary). The MOD offers no evidence of retroactive intent nor has the Court found any; thus, this argument fails on the merits.

**3.** *See supra* Part III(A) (Factual Background).

Act. Flatow has waived the right to attach: (1) property at issue in claims against the United States before an international tribunal, (2) property that is the subject of awards rendered by such a tribunal,[4] and (3) property that is subject to 28 U.S.C. § 1610(f)(1)(A) (Foreign Sovereign Immunities Act). The exemptions, it seems, have swallowed the rule.

### 1. Property At Issue in Claims Against the United States

The MOD argues that its judgment against Cubic falls within the first exemption relating to "property at issue in claims against the United States before an international tribunal." Victims Protection Act at § 2002(a)(2)(D). According to MOD, "the asset at issue between Cubic and MOD in the instant case is at issue in Case B/61 (*See* MOD's moving papers, Exhibits '1' and '2') between the United States and Iran in the Hague." Pet'r's Reply at 9. Exhibit "2" entitled "Statement No. 16," is Iran's submission to the Hague concerning the property at issue in Case B/61. Under the heading "Cubic Items," Iran states that "[t]he items at issue are sophisticated defence [sic] equipment called Air Combat Maneuvering Range ... produced under the contract entered into with [Cubic] on 3 October 1977 ...." Pet'r's Ex. 2 at 1. Clearly, this is the contract that led to the ICC award confirmed by this Court in its judgment of December 8, 1998. If Statement No. 16 said no more, the Court might agree that the MOD's judgment qualifies as property at issue in claims before an international tribunal and is, therefore, immune from attachment. However, elsewhere within Statement No. 16, Iran distinguishes the ICC Award that underlies this Court's judgment from the claims at issue before the Hague:

> The ICC proceeding ... cannot have *res judicata* effect on the present case. This is because the present [claim before the Hague] lack three identities (identity of object, identity of parties, and identity of subject matter) required for that purpose..... The opposing party in this case is, obviously not a U.S. private company, but the United States government. The subject matter of this Case, *at variance with the ICC action,* is the losses suffered by Iran as a result of the United States' non-export of Iranian properties.

*Id.* at 3–4 (emphasis added). Whatever the nature and current posture of the dispute before the Hague, by Iran's own admission, the subject matter of that action does not include the ICC Award confirmed by this Court. Therefore, the Court finds that the MOD's judgment does not fall within the first exemption to Section 2002(a)(2)(D).

### 2. Property that is Subject to 28 U.S.C. § 1610(f)(1)(A) (Foreign Sovereign Immunities Act)

The MOD also argues that its judgment against Cubic falls within the third exemption from attachment contained in Section 2002(a)(2)(D), relating to property that is "subject to section 1610(f)(1)(A) of title 28, United States Code." Victims Protection Act at § 2002(a)(2)(D). The Court agrees. Section 1610(f)(1)(A) of Title 28 states:

> [A]ny property with respect to which financial transactions are prohibited or regulated pursuant to ... the *International Emergency Economic Powers Act (50 U.S.C. 1701–1702),* or any other proclamation, order, regulation, or license issued pursuant thereto, shall

---

4. MOD has not raised this exemption in any of its arguments. Therefore, the Court does not address it.

be subject to execution or attachment in aid of judgment relating to a claim [against a foreign state]. . . .

(emphasis added).

Section 1610 (f)(1)(A) incorporates the International Emergency Economic Powers Act ("the IEEPA"), a statute that empowers the President to prescribe regulations to regulate or prohibit "any transactions in foreign exchange" (50 U.S.C. § 1702) with nations or entities that pose "an unusual or extraordinary threat [to] . . . the United States." 50 § U.S.C. 1701. Pursuant to that authority, the Office of Foreign Asset Control ("OFAC")[5] has promulgated regulations regulating and prohibiting transactions with Iran and its political subdivisions, including the MOD. *See* 31 C.F.R. § 535.301 ("Iran; Iranian Entity"). The property interests to which the regulations apply are myriad. Indeed, OFAC's definition of "property" is virtually all-encompassing, and specifically includes "judgments." *See* 31 C.F.R. § 535.311 ("Property; Property Interests"). Therefore, after following the statutory maze from Section 2002(a)(1)(D) of the Victims Protection Act, to Section 1610(f)(1)(A) of Title. 28 (FSIA), to Section 1702 of Title 50 (IEEPA), to Section 535.301 of Chapter 31, Code of Federal Regulations (OFAC's definition of "property"), the Court concludes that the MOD's judgment falls squarely within the third exemption from attachment.

Flatow proffers two arguments against this plain reading of the relevant texts. First, he maintains that it violates the Convention on the Enforcement of Foreign Arbitral Awards ("the New York Convention")[6] because it permits the President to prohibit the attachment of judgments confirming ICC awards. This argument rests on faulty logic. Flatow errs when he equates a prohibition on attachment of the award with a failure to enforce the award. The limitation on attachment contained in the statutory framework at issue relates only to the manner in which the federal government manages blocked foreign assets (including judgments confirming ICC awards) located within the United States. It does not alter the ICC award. Thus, the limitation does not violate the Convention.

Second, Flatow contends that the Court's interpretation yields an absurd result. He argues that the Victim's Protection Act is intended to aid victims in their efforts to recover judgments owed to them by state sponsors of terrorism. Thus, he maintains, an interpretation that virtually eradicates his ability to attach Iranian property is at odds with the very purpose of the statute. This argument, however, does not hold up well under close scrutiny.

To understand how Section 2002 functions, one must begin with Section 1610. Standing alone, Section 1610(f)(1)(A) "imports" OFAC's extremely broad definition of "property" to *allow* victims of terrorism such as Flatow to attach practically all Iranian property under the sun.[7] If an individual, however, avails himself of direct payment from the U.S. Treasury, then Section 2002(a)(2)(D) converts the broad attachment authority contained in Section 1610(f)(1)(A) into an equally broad ban on attachment. Essentially, through his exercise of Option (B) of Section 2002(a)(1), Flatow traded his statutory right to attach

---

5. OFAC is a subsidiary of the U.S. Dept. of Treasury.

6. The New York Convention limits the authority of signatory nations to review or alter foreign arbitration awards. It is codified at 9 U.S.C. §§ 201–208.

7. Congress has, however, empowered the President to waive this broad attachment authority. *See infra* Part IV(E); 28 U.S.C. 1610(f)(3) ("The President may waive any provision in Paragraph (1) in the interest of national security.")

Iranian property located within the United States for a lump sum payment of over $26,000,000. The Court does not find this result "absurd."

Moreover, the Court's interpretation of the statutory and regulatory framework at issue is supported by specific legislative history. The Conference Committee report accompanying the Victims Protection Act specifically addresses the issue of judicial attachment in cases where victims have elected to receive compensation directly from the federal government:

> **A waiver of the attachment provision would seem appropriate for final and pending cases identified in subsection (a)(2) [of Section 2002]. In these cases, *judicial attachment is not necessary* because the executive branch will appropriately pay compensatory damages to the victims and used blocked assets to collect funds from terrorist states.**

H.R. Rep. 106–939, at 118 (2000) (emphasis added).

■ Furthermore, in a notice entitled "Payments to Persons who Hold Certain Judgments against Cuba or Iran," the OFAC published the following opinion:

> **Virtually all Iranian or Cuban property within the jurisdiction of the United States is 'property with respect to which financial transactions are prohibited or regulated' pursuant to IEEPA .... Section 2002(a)(2)(D) [of the Victim's Protection Act] therefore prohibits an applicant who elects the 100 percent option from seeking to execute his or her punitive damages award against, or from seeking to attach, virtually all Iranian or Cuban assets within the jurisdiction of the United States.**

65 FR 70382, 70384 (Nov 22, 2000). This opinion is based on OFAC's interpretation of the IEEPA, (a statute under which it exercises rulemaking authority) and one of its own regulations (31 C.F.R. § 535.311 ("Property; Property Interests")). This Court, therefore, owes OFAC's interpretation a high degree of deference. *See, e.g., Consarc Corp. v. United States Dept. of Treasury Office of Foreign Assets Control,* 71 F.3d 909, 914 (D.C.Cir.1995) (stating that an OFAC interpretation of IEEPA controls unless the party challenging the interpretation "demonstrate[s] that the statute clearly forbids the agency's interpretation or that the interpretation is unreasonable."); *id.* at 915 (stating that OFAC's interpretations of its own regulations are entitled to "an even greater degree of deference than the *Chevron* standard, and must prevail unless plainly inconsistent with the regulation."). Accordingly, the Court finds that by electing to receive 100% of his compensatory damages pursuant to Section 2002(a)(1)(B) of the Victims Protection Act, Flatow has relinquished his right to attach the MOD's judgment.[8]

This settles the issue with regard to Flatow's lien. Mr. Elahi, however, has not received compensation under the Victim' Protection Act. Thus, the validity of Elahi's lien turns on the question of whether the MOD's judgment is immunized from attachment by the FSIA.

## (C) Whether the MOD's judgment is Exempt from Attachment as "Property of Military Character" Pursuant to Section 1611(b)(2) of the FSIA

■ The MOD argues that its judgment is immune from attachment because it is

---

**8.** This Court is not the first to reach this conclusion. *See Flatow v. Islamic Republic of Iran,* 201 F.R.D. 5, 10 (D.D.C. June 5, 2001) (holding that through his exercise of the pay-

ment options contained in Section 2002(a)(1)(B), Flatow relinquished his right to "attach property that is regulated by the IEEPA....")

"property of military character" pursuant to Section 1611 of the FSIA (28 U.S.C. § 1611(b)). Section 1611(b) of Title 28 provides:

**(b) Notwithstanding the provisions of section 1610 of this chapter [which waives foreign sovereign immunity under several enumerated circumstances] the property of a foreign state shall be immune from attachment and execution if ....**

**(2) the property is, or is intended to be used in connection with a military activity and**

**(a) is of military character; or**

**(b) is under the control of a military or defense agency**

The MOD maintains that "it is impossible to conceive of anything more military than an Air Combat Maneuvering Range." Pet'r's Br. at 20. True, but the ACMR is not the property at issue before this Court. The property at issue is a judgment confirming an arbitration award in the MOD's favor, arising out of Cubic's breach of the ACMR contract. While the 1977 contract between Cubic and the MOD was of military character, the money award—confirmed in this Court 21 years after Cubic's breach—is not of military character. The legislative history clearly supports this conclusion. "Property is of military character if it consists of *equipment* in the broad sense—such as weapons, ammunition, military transport, warships, tanks, communications equipment." H.R. Rep. 94–1487 at 6630 (1976) (emphasis added). Money is not equipment.

Moreover, the statute states that only property that "*is, or is intended to be* used in connection with a military activity," qualifies as "property of military character." 28 U.S.C. § 1611 (emphasis added). *Present* or *future* intended use—not a prior or intended use that never came to fruition—determines the military character of the property at issue. *See* H.R. Rep. 94–

1487 at 6630 (stating "property will be immune only if its *present or future* use is military ...." (emphasis added)). The MOD has admitted, in its motions and in expert reports relating to Iranian banking policies, that if it ever manages to obtain the money at stake, the money will revert to the Central Bank of Iran. The judgment at issue is not presently being used in connection with a military activity, nor, apparently, will the money be used for future military activities. Thus, a plain reading of the text of Section 1611(b) indicates that the MOD's judgment is not immune from attachment under this section.

The MOD contends that "[t]he overriding consideration of the United States policy expressed in 28 U.S.C. § 1611 is to *facilitate purchase of military equipment* developed and manufactured in the United States ...." Pet'r's Br. at 21 (emphasis added). The Court agrees. Iran, however, is not a nation to whom the United States sells arms. Indeed, selling arms to Iran is a criminal violation under the IEEPA and can result in up to 10 years imprisonment. *See* 50 U.S.C. § 1705 ("Penalties"). Therefore, the U.S. policy in favor of facilitating the foreign purchase of military equipment will suffer no harm if victims of terrorism are permitted to attach the MOD's judgment. To the contrary, allowing attachment would further the strong policy—embodied in the Victims Protection Act—of aiding victims' access to foreign assets. Accordingly, the Court rejects the MOD's argument that its judgment against Cubic is immune from attachment as property of military character.

**(D) Whether the MOD's judgment is Exempt from Attachment as "Property of a Central Bank" Pursuant to Section 1611(b)(1) of the FSIA**

As an alternative to its property of military character argument, the MOD

contends that its judgment is immune from attachment because it is the property of a central bank. Section 1611(b)(1) of Title 28 exempts from attachment property that is "of a central bank or monetary authority held for its own account . . . ." In support of its argument, the MOD has filed the expert opinion of Dr. Assadollah Karimi. Dr. Karimi's lengthy declaration details the workings of Iranian banking law. He asserts that, under Iranian law, the MOD's judgment is the property of the Central Bank of Iran. However, the laws of the United States—not Iranian law—control the inquiry whether the judgment of this Court is immune from attachment. Thus, the MOD's colloquy on the ins-and-outs of Iranian banking is irrelevant.

The judgment at issue is in favor of the MOD, not the Central Bank of Iran. And the MOD is the Iranian entity litigating the various matters relating to the MOD's judgment, both here and before the Ninth Circuit. If, as the MOD contends, the Central Bank of Iran owns the judgment, then why is the Central Bank not before the Court? How does the MOD have standing to seek a judicial determination concerning property it claims not to own? Furthermore, elsewhere in its supporting documents the MOD states that "[i]t cannot be argued that the Judgment is not under the agency or authority of the MOD. . . . It is an account that has been adjudicated by this Court to be in the name of MOD." Pet'r's Br. at 22. The Court agrees. Accordingly, the Court

holds that the MOD's judgment is not the property of a central bank for purposes of 28 U.S.C. § 1611(b)(1).

**(E) Whether the MOD's judgment is Immune from Attachment Pursuant to Presidential Determination No.2001–03.**

 As previously discussed, Section 1610(f)(1)(a) of the FSIA permits the attachment of a wide array of foreign property in satisfaction of judgments held against state sponsors of terrorism. Section 1610(f)(1)(B)(3), however, empowers the President to waive the broad attachment provisions of 1610(f)(1)(A). *See* 28 U.S.C. § 1610(f)(1)(B)(3) ("The President may waive any provision of paragraph (1) in the interest of national security."). The very day that the Victim's Protection Act became law, President Clinton issued Presidential Determination No.2001–03, waiving the attachment provisions of Section 1610(f)(1)(a). *See* Presidential Determination No.2001–03, 65 FR 66483 (Oct. 28, 2000). Thus, Elahi may not rely upon Section 1610(f)(1)(a) to attach the MOD's judgment.

This does not settle the issue of attachment, however, for provisions of the FSIA other than Section 1610(f)(1)(a) may except the MOD's judgment from immunity from attachment. Elahi contends that attachment is permissible under either Section 1610(a)(7) or Section 1610(b)(2). The Court, however, sees no need to reach that question, for attachment is warranted on other grounds.[9]

---

9. Whether the MOD's judgment may be attached pursuant to Section 1610(a)(7) or 1610(b)(2) turns on the question whether the judgment is property "used for a commercial activity in the United States . . . ." 28 U.S.C. § 1610(a)(7) or whether Iran or the MOD is currently "engaged in a commercial activity in the United States . . . ." 28 U.S.C. § 1610(b)(2). It is clear that contracting to purchase military goods is a "commercial activity" for purposes of the FSIA. *See* H. Rep. No 94–1487 at 6615 (stating that "a contract

by a foreign government to buy . . . equipment for its armed forces . . . is a commercial activity."). Whether the MOD's judgment, arising out of an arbitration award obtained in satisfaction for the breach of a military sales contract, qualifies as property "used for a commercial activity" is a thornier question. *See, e.g., Flatow v. Islamic Republic of Iran,* 76 F.Supp.2d 16, 24 (D.D.C.1999) (discussing whether permitting attachment of a bank account under Section 1610(a)(7)'s "commer-

The property at issue is special in character. It is a judgment debt arising from the confirmation of a foreign arbitration award. It is, therefore, the product of two acts on the part of the MOD, either of which is sufficient to establish a voluntary waiver of general jurisdictional immunity. First, the MOD submitted to ICC arbitration in Switzerland. *See* 28 U.S.C. § 1605(a)(1) ("A foreign state shall not be immune from the jurisdiction of courts of the United States . . . in which the foreign state has waived its immunity either explicitly or by implication . . . ."); *In re Republic of Philippines*, 309 F.3d 1143 (9th Cir.2002) (stating that Section 1605(a)(1)'s implied waiver exception is triggered when a foreign state agrees to arbitration in another country) (page references unavailable); *Ipitrade Int'l v. Federal Republic of Nigeria*, 465 F.Supp. 824, 826 (D.D.C.1978) (stating that submitting to arbitration under ICC rules constitutes an implicit waiver of sovereign immunity). Second, the MOD sought confirmation of the arbitration award in this Court. *See Joseph v. Office of the Consulate General of Nigeria*, 830 F.2d 1018, 1021 (9th Cir. 1987) (stating that filing pleadings in federal court without raising the issue of sovereign immunity is an implicit waiver under Section 1605(a)(1)).

The MOD never could have obtained the judgment against Cubic without lowering the shield of sovereign immunity. Reason dictates that it cannot now raise the shield to protect the judgment. Statute dictates

the same result. Section 1609 of the FSIA states:

> **Subject to existing international agreements to which the United States is a party at the time of enactment of this Act** the property in the United States of a foreign state shall be immune from attachment arrest and execution . . . .

28 U.S.C. § 1609 (emphasis added). One such "existing international agreement" is the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (codified at 9 U.S.C. §§ 201–208 and known as the "New York Convention").[10] The MOD relied upon the New York Convention when it petitioned the Court to confirm the ICC arbitration award in 1998.[11] *See* The MOD's "Petition for Order Confirming Foreign Arbitral Award [9 U.S.C.S. § 207]"(Doc. No. 1 filed 25, 1998). To the extent that they do not conflict with terms of the Convention, the general arbitration provisions of Title 9 apply to proceedings brought under 9 U.S.C. § 201 *et seq. See* 9 U.S.C. § 208.

Among the general provisions is 9 U.S.C. § 13. Section 13 states:

> **The judgment [confirming an arbitration award] . . . shall have the same force and effect, in all respects, as, *and be subject to all the provisions of law relating to, a judgment* in an action [in federal court]; and it may be enforced as if entered in an action in the court in which it is entered.**

cial activity exception' would render superfluous Congress" enactment of Section 1610(f)(1)(a)). Because the nature of the property at issue gives rise to alternative grounds for attachment, the Court is not compelled to reach this question.

**10.** The United States ratified the New York Convention in 1970. The FSIA was not enacted until 4 years later.

**11.** Iran is not a party to the New York Convention. However, Switzerland—the nation in which the ICC arbitration took place—is a party. The MOD invoked Switzerland's party status to petition the Court to confirm the award pursuant to the provisions of the New York Convention. *See* The MOD's "Petition for Order Confirming Foreign Arbitral Award [9 U.S.C.S. § 207]"(Doc. No. 1 filed June 25, 1998).

9 U.S.C. § 13 (emphasis added). The MOD's Judgment, therefore, is subject to all of the provisions of law that apply to other federal district court judgments. Among these provisions is Federal Rule of Civil Procedure 64, which permits the attachment and garnishment of a debtor's property by judgment creditors such as Elahi. *See* Fed.R.Civ.P. 64. Accordingly, the Court holds that Elahi's lien against the MOD's judgment is valid and enforceable.

## V. CONCLUSION

(A) The Court holds that the MOD's judgment is property regulated pursuant to the IEEPA. Therefore, Stephen Flatow relinquished his right to attach the MOD's judgment by exercising Option (B) of Section 2002(a)(1) of the Victims Protection Act. Accordingly, the Court GRANTS Petitioner's "Motion for Judicial Determination That its Judgment Against Cubic Defense Systems Is Immune from Attachment or Execution by Stephen M. Flatow" and ORDERED the Clerk to STRIKE the notice of lien filed by Mr. Flatow on April 6, 1999.[12]

(B) The Court holds that the MOD's Judgment is not immune from attachment of execution by Mr. Elahi. Therefore, the Petitioner's "Motion for Judicial Determination That it's Judgment Against Cubic Defense Systems Is Immune from Attachment or Execution by Dariush Elahi" is DENIED.

IT IS SO ORDERED.

---

**12.** Despite Mr. Flatow's arguments to the contrary, *see* Flatow's Mem. in Opp. at 16, the action taker today in no way effects the validity of the writ of garnishment issued by the Eastern District of Virginia on December 21, 1998. The writ extends to *all* Iranian property that Cubic may possess. Today, the Court holds merely that Mr. Flatow may not attach *this Court's* judgment of December 8, 1998.