**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE MINISTRY OF DEFENSE AND
SUPPORT FOR THE ARMED
FORCES OF THE ISLAMIC REPUBLIC OF
IRAN, as Successor in Interest to
the Ministry of War of the
Government of Iran,
                *Plaintiff-Appellee,*

    v.

CUBIC DEFENSE SYSTEMS, INC., as
Successor in Interest to Cubic
International Sales Corporation,
                *Defendant-Appellant.*

No. 99-56380

D.C. No.
CV-98-01165-RMB

THE MINISTRY OF DEFENSE AND
SUPPORT FOR THE ARMED
FORCES OF THE ISLAMIC REPUBLIC OF
IRAN, as Successor in Interest to
the Ministry of War of the
Government of Iran,
                *Plaintiff-Appellant,*

    v.

CUBIC DEFENSE SYSTEMS, INC., as
Successor in Interest to Cubic
International Sales Corporation,
                *Defendant-Appellee.*

No. 99-56444

D.C. No.
CV-98-01165-RMB

OPINION

Appeal from the United States District Court
for the Southern District of California
Rudi M. Brewster, District Judge, Presiding

20991

Argued and Submitted
February 8, 2011—Pasadena, California

Filed December 15, 2011

Before: Alex Kozinski, Chief Judge, Michael Daly Hawkins
and Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher

---

## COUNSEL

Charles A. Bird (argued) and Michelle A. Herrera, Luce, For-ward, Hamilton & Scripps LLP, San Diego, California, for Cubic Defense Systems, Inc.

Mina Almassi, Los Altos Hills, California; Steven W. Kerekes (argued), Pasadena, California, for the Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran.

George W. Madison, General Counsel, U.S. Department of the Treasury; Harold Hongju Koh, Legal Adviser, U.S. Department of State; Tony West, Assistant Attorney General; Laura E. Duffy, United States Attorney; Douglas N. Letter and Lewis S. Yelin, Civil Division, U.S. Department of Jus-tice, Washington, D.C., for amicus curiae United States.

---

## OPINION

FISHER, Circuit Judge:

These appeals require us to decide whether confirmation of an arbitration award in favor of the Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran is "contrary to the public policy" of the United States under

the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, known as the "New York Convention." We hold, consistent with the position of the United States as amicus curiae, that confirmation of the award does not violate any public policy of the United States. We also hold that the district court's judgment is a "money judgment" subject to postjudgment interest, and that a district court has discretion to award prejudgment interest and attorney's fees in an action to confirm an arbitration award under the Convention. Accordingly, we affirm the judgment in part, vacate it in part and remand to the district court for reconsideration of the Ministry's motions for prejudgment interest and attorney's fees.

## Background

In 1977, Cubic International Sales Corporation, predecessor in interest to appellant Cubic Defense Systems, Inc. ("Cubic"), a United States corporation, contracted with the Ministry of War of the government of Iran, predecessor of appellee Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran ("Ministry"), for sale and service of an air combat maneuvering range for use by Iran's military. The Iranian Revolution resulted in nonperformance of the contracts. Consequently, the parties agreed in 1979 that the contracts would be discontinued and that Cubic would try to resell the equipment, with a later settlement of the accounts. In 1981, Cubic sold a modified version of the equipment to Canada.

In 1982, the Ministry filed breach of contract claims against Cubic with the Iran-United States Claims Tribunal at the Hague. In 1987, that tribunal issued an order stating that it lacked jurisdiction to hear the matter. *See Ministry of Nat'l Def. of the Islamic Republic of Iran v. Gov't of the United States*, 14 Iran-U.S. Cl. Trib. Rep. 276, 1987 WL 503814 (1987).

In 1991, the Ministry filed a request for arbitration before the International Court of Arbitration of the International Chamber of Commerce (ICC). The ICC, sitting in Switzerland, made a final award in those proceedings in May 1997. The final award makes a net award of $2,808,519 plus pre-award interest in favor of the Ministry. The ICC also directed Cubic to reimburse the Ministry $60,000 for arbitration costs.

In June 1998, after Cubic failed to pay, the Ministry filed a petition in federal district court to confirm the ICC's award under the New York Convention. *See* 9 U.S.C. § 207.[1] The district court issued an order granting the Ministry's petition in December 1998.

The Ministry subsequently filed a motion for prejudgment interest covering the period between the ICC's final award and the district court's confirmation. The motion also requested attorney's fees based on Cubic's alleged failure to comply with the ICC's decision. The district court denied the motion, concluding that prejudgment interest and attorney's fees were unavailable in an action to confirm a foreign arbitration award under the Convention.

The district court entered judgment in August 1999. Cubic timely appealed confirmation of the award, and the Ministry timely cross appealed denial of prejudgment interest and attorney's fees. Proceedings were suspended pending litigation over whether certain judgment creditors of Iran could attach the Ministry's judgment. That litigation has now been concluded. *See Ministry of Def. & Support for Armed Forces*

---

[1]Confirmation is a summary proceeding that converts a final arbitration award into a judgment of the court. *See Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997). Once the award is confirmed, the judgment has the same force and effect of a judgment in a civil action and may be enforced by the means available to enforce any other judgment. *See AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 579 F.3d 1268, 1273 (11th Cir. 2009) (applying 9 U.S.C. § 13).

*of Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 236 F. Supp. 2d 1140 (S.D. Cal. 2002), *aff'd*, 385 F.3d 1206 (9th Cir. 2004), *vacated and remanded*, 546 U.S. 450 (2006), *remanded to*, 495 F.3d 1024 (9th Cir. 2007), *rev'd*, 556 U.S. 366 (2009), *remanded to*, 569 F.3d 1004 (9th Cir. 2009).

Following oral argument in February 2011, we invited the United States to express its view on whether confirmation of the ICC's award would be contrary to the public policy of the United States under Article V(2)(b) of the Convention. The United States filed an amicus brief supporting affirmance. We then directed the parties to file supplemental briefs addressing the United States' brief, which they have done. These appeals accordingly are ripe for decision.

## DISCUSSION

Cubic argues that the district court erred by confirming the ICC's award because confirmation is contrary to the public policy of the United States and, in the alternative, because the award has not yet become binding on the parties. Cubic also argues that the district court's judgment is not subject to post-judgment interest because the district court did not specify the dollar amount of the confirmed award. On cross appeal, the Ministry argues that the district court abused its discretion by denying its motion for prejudgment interest and attorney's fees. We address these arguments in turn.

## I.

[1] Confirmation of foreign arbitration awards is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, known as the New York Convention, and federal law implementing the Convention, 9 U.S.C. §§ 201-208. Section 207 provides:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbi-

tration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207.

**[2]** The seven grounds for refusing to confirm an award are set out in Article V of the Convention.[2] These defenses are

---

[2]Article V states:

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

(a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

construed narrowly, and the party opposing recognition or enforcement bears the burden of establishing that a defense applies. *See Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 836 (9th Cir. 2010).

Cubic invokes two of these defenses here, arguing that "recognition or enforcement of the award would be contrary to the public policy of [the United States]," and, in the alternative, that the "award has not yet become binding on the parties." N.Y. Convention, art. V(1)(e), V(2)(b). Although Cubic did not raise these issues in the district court, we exercise our discretion to consider them for the first time on appeal because they are purely questions of law and do not depend on further factual development of the record. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). We hold that neither defense applies, and accordingly affirm the district court's confirmation of the ICC's award.

## A.

## 1.

**[3]** Cubic argues that confirmation of the award would be contrary to the public policy of the United States. The Convention's public policy defense, Article V(2)(b), states:

> Recognition and enforcement of an arbitral award may . . . be refused if the competent authority in the country where recognition and enforcement is sought

---

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

finds that . . . (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

N.Y. Convention, art. V(2).

**[4]** In recognition of a presumption favoring upholding international arbitration awards under the Convention, this defense is "construed narrowly." *Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA)*, 508 F.2d 969, 974 (2d Cir. 1974). It applies only when confirmation or enforcement of a foreign arbitration award "would violate the forum state's most basic notions of morality and justice." *Id.*; *accord TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 938 (D.C. Cir. 2007); *Admart AG v. Stephen & Mary Birch Found., Inc.*, 457 F.3d 302, 308 (3d Cir. 2006); *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 306 (5th Cir. 2004); *Slaney v. Int'l. Amateur Athletic Fed'n*, 244 F.3d 580, 593 (7th Cir. 2001); *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 87 F.3d 844, 851 n.2 (6th Cir. 1996). Although this defense is frequently raised, it "has rarely been successful." Andrew M. Campbell, Annotation, *Refusal to Enforce Foreign Arbitration Awards on Public Policy Grounds*, 144 A.L.R. Fed. 481 (1998 & supp.) (collecting cases).

### 2.

Cubic argues that confirmation of the ICC's award "is contrary to a fundamental public policy of the United States against trade and financial transactions with the Islamic Republic of Iran." As evidence of this policy, Cubic points to the sanctions the United States has imposed on Iran, including the Iranian Assets Control Regulations, 31 C.F.R. pt. 535, the Iranian Transactions Regulations, 31 C.F.R. pt. 560, and the Weapons of Mass Destruction Proliferators Sanctions Regulations (WMD Sanctions Regulations), 31 C.F.R. pt. 544.

Cubic argues that these sanctions regimes are relevant to the public policy analysis for two related reasons. First, the sanctions prohibit Cubic from paying the ICC's award unless the Treasury Department's Office of Foreign Assets Control (OFAC) issues a specific license.[3] Cubic contends that the existence of a policy prohibiting *payment* of the award is sufficient to demonstrate the existence of a fundamental public policy against *confirmation* of the award as well. Second, even though the sanctions do not specifically prohibit confirmation of the award, Cubic sees them as evidence of a comprehensive United States policy against trade, investment and economic support for Iran that makes even confirmation of the ICC's award repugnant to the public policy of the United States.

In support of this latter argument, Cubic cites *Bassidji v. Goe*, 413 F.3d 928 (9th Cir. 2005), where we considered the scope and purposes of the Iranian Transactions Regulations — a set of sanctions prohibiting virtually all trade with and investment in Iran by a United States person. *See* 31 C.F.R. §§ 560.201-560.210. *Bassidji* described the regulations as "a means toward the larger end of exerting economic pressure on Iran," in order to induce Iran to abandon policies that the United States deems adverse to its interests. *Bassidji*, 413 U.S. at 934-35. Having thus defined the underlying purposes of the regulations broadly, we suggested that virtually any "transfer of wealth to Iran," or any "payment [that] would

---

[3]*See* 31 C.F.R. § 560.510(a) (providing that OFAC may issue specific licenses "on a case-by-case basis" to authorize transactions related to "the payment of awards of a tribunal" that resolve disputes between the Government of Iran and United States nationals); *see also id.* § 544.507(c) (requiring a specific license for "the enforcement of any . . . judgment . . . purporting to transfer" property of a designated person subject to U.S. jurisdiction); *Designation of Iran's Islamic Revolutionary Guard Corps (IRGC) and Ministry of Defense and Armed Forces Logistics (MODAFL) Pursuant to Executive Order 13,382*, 72 Fed. Reg. 71,991 (Dec. 19, 2007) (making the Ministry a designated person under the WMD Sanctions Regulations).

provide funds to the Iranian economy," would violate the "fundamental purposes," if not necessarily the letter, of the regulations. *Id.* at 935, 939.

**3.**

We are not persuaded by Cubic's argument, which gives too little weight to this country's strong public policy in support of the recognition of foreign arbitration awards, and too much weight to the regulatory restrictions governing payment of the ICC's award. For the reasons that follow, we conclude that the Ministry, and the United States as amicus curiae, have the better argument.

**[5]** Our analysis begins with the strong public policy favoring confirmation of foreign arbitration awards. "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). As we have said before, "[t]he public policy in favor of international arbitration is strong." *Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992) (alteration in original) (quoting *Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512, 516 (2d Cir. 1975)) (internal quotation marks omitted). To prevail, therefore, Cubic must demonstrate a countervailing public policy sufficient to overcome this strong policy favoring confirmation of the ICC's award. Cubic has not met that "substantial" burden. *Id.*

**[6]** First, although American relations with Iran are heavily regulated, the applicable sanctions regulations "do not preclude the confirmation of the ICC Award." Br. of the United States as Amicus Curiae 22. The Iranian Assets Control Regulations, which the United States adopted in response to the

seizure of American hostages in Tehran in 1979, block the transfer of certain property in which Iran has an interest. A general license, however, authorizes the transfer of property interests acquired after January 1981, *see* 31 C.F.R. § 535.579(a), and the Supreme Court has already held that Iran's interests in this case are covered by that general license. *See Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 129 S. Ct. 1732, 1739 (2009). The Iranian Assets Control Regulations accordingly do not prohibit payment, let alone confirmation, of the ICC award.

**[7]** The Iranian Transactions Regulations and the WMD Sanctions Regulations also permit confirmation of the award. As noted, each of these sets of sanctions independently prohibits *payment* of the ICC award without a specific license issued by OFAC. *See* 31 C.F.R. §§ 544.507(c), 560.510(a)(3). Neither regime, however, prohibits confirmation of the award.

**[8]** Second, although Cubic places great stock in the regulations' prohibition on payment (absent a license), there is a great deal of difference between payment and confirmation. *See* Br. of the United States as Amicus Curiae 22. Confirmation, standing alone, transfers no wealth to Iran. Thus, even if Cubic is correct that the United States has a fundamental public policy against economic support for the government of Iran, confirmation does not violate that policy. *See Nat'l Oil Corp. v. Libyan Sun Oil Co.*, 733 F. Supp. 800, 820 (D. Del. 1990) ("Although Sun Oil argues that confirmation of this award would mean that U.S. dollars would end up financing Qadhafi's terrorist exploits, the Court has already pointed out that the President is empowered to prevent any such transfer through the Libyan Sanctions Regulations.").

Third, the difference between confirmation and payment is accentuated when, as in this case, payment is subject to licensing rather than barred absolutely. We should not refuse to confirm an arbitration award because payment is prohibited

when payment may in fact be authorized by the government's issuance of a specific license. According to the United States' brief, "[i]f this Court affirms the confirmation of the award, the Treasury Department can issue a license requiring Cubic to make any payment satisfying the judgment into a blocked account held in the Ministry's name by a U.S. financial institution." Br. of the United States as Amicus Curiae 3-4.[4] The possibility that OFAC could issue a license supports confirmation of the award. *Cf. Belship Navigation, Inc. v. Sealift, Inc.*, No. 95 CIV. 2748, 1995 WL 447656, at *6 (S.D.N.Y. July 28, 1995) ("Any award that Belship might recover through arbitration would be placed in a 'blocked' interest bearing account until relations with Cuba improve to the point where the funds may be released to Belship. Allowing arbitration to proceed will hardly violate the United States' 'most basic notions of morality and justice.' ").

Fourth, the applicable regulations provide general licenses authorizing legal representation of Iran in legal proceedings in the United States relating to disputes between Iran and a United States national. *See* 31 C.F.R. § 544.507(a)(3) (authorizing "legal services to . . . persons whose . . . interests in property are blocked," for the "[i]nitiation and conduct of domestic U.S. legal . . . proceedings in defense of property interests subject to U.S. jurisdiction"); *id.* § 560.525(a)(3) (authorizing the provision of legal services for the "[i]nitiation and conduct of domestic United States legal . . . proceedings on behalf of the Government of Iran"). Although these regulations do not expressly authorize confirmation of foreign arbitration awards in favor of Iran, they show that legal proceedings to resolve disputes such as this one are, short of payment of a judgment, not in conflict with United States sanctions policy.

---

[4]The United States explains that OFAC may issue a license requiring Cubic to pay the award into an account where it would be used to offset any liability the United States may have to Iran in connection with ongoing proceedings in the Iran-U.S. Claims Tribunal regarding the Cubic contracts. *See* Br. of the United States as Amicus Curiae 15.

**[9]** Finally, as noted, the United States as amicus curiae supports affirmance of the district court's confirmation of the ICC's award. An expression of national policy is not necessarily dispositive of the public policy issue under the Convention. *See Parsons & Whittemore*, 508 F.2d at 974 ("To read the public policy defense as a parochial device protective of national political interests would seriously undermine the Convention's utility."). Nonetheless, given Cubic's invocation of our country's fraught relationship with Iran as expressed through various trade sanctions, the government's confirmation that the ICC's award comports with the national and foreign policy of the United States is entitled to great weight. *Cf. Nat'l Oil Corp.*, 733 F. Supp. at 820 ("Given [that the current Administration has given Libya permission to bring this action], this Court simply cannot conclude that to confirm a validly obtained, foreign arbitral award in favor of the Libyan Government would violate the United States' 'most basic notions of morality and justice.' ").

**[10]** For these reasons, we hold that confirmation of the ICC's award is not contrary to the public policy of the United States under Article V(2)(b) of the New York Convention. Cubic has not identified a public policy sufficient to overcome the strong federal policy in favor of recognizing foreign arbitration awards. *See* Br. of the United States as Amicus Curiae 21.

**4.**

Cubic argues in the alternative that confirmation of the ICC's award is contrary to the public policy of the United States because "affirmance of the judgment would put Cubic in the nightmare position of being subject to an apparently enforceable judgment when Cubic and any of its involved agents would commit crimes by paying or allowing payment." Supplemental Br. of Cubic Def. Sys. 4.[5] Cubic asserts that

---

[5]Violations of the Iranian Transactions Regulations and WMD Sanctions Regulations are subject to both civil and criminal penalties. *See* 50 U.S.C. § 1705; 31 C.F.R. §§ 544.701(a), 560.701(a).

"the mere existence of an unstayed judgment may threaten the existence of the judgment debtor, e.g., by violating covenants in core financing agreements." *Id.* at 9.

There has, however, been no showing that the judgment is unpayable; OFAC has discretion to issue a specific license, and may do so. In any event, were a court to confirm an unpayable arbitration award, we presume the affected party could seek a stay of execution of judgment, avoiding the "nightmare" Cubic fears. As a general matter, a "stay of execution is proper upon a showing that an immediate enforcement of the judgment will result in unnecessary hardship to the judgment debtor." 30 Am. Jur. 2d *Executions* § 314 (2011); *see also* 33 C.J.S. *Executions* § 252 (2011) ("A court may grant a stay in the furtherance of justice whenever it would be unjust to further execute or enforce the judgment, or where, although it is proper to enforce the judgment, there is good reason why execution should be postponed." (footnote omitted)); *cf. Hewlett-Packard Co., Inc. v. Berg*, 61 F.3d 101, 105-06 (1st Cir. 1995) (holding that a district court has discretion, in an action under the New York Convention, to stay confirmation of an arbitration award for prudential reasons). Cubic's argument is therefore unpersuasive.

## B.

**[11]** Cubic's argument that the ICC award has not become binding on the parties is similarly without merit. Under Article V(1)(e) of the Convention:

> Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that . . . (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country

in which, or under the law of which, that award was made.

N.Y. Convention, art. V(1). This defense may be invoked when an action to confirm or enforce an arbitration award is filed before the award has become final. *See Publicis Commc'n v. True N. Commc'ns, Inc.*, 206 F.3d 725, 728 (7th Cir. 2000). An arbitration award becomes binding when "no further recourse may be had to another arbitral tribunal (that is, an appeals tribunal)." *Fertilizer Corp. of India v. IDI Mgmt., Inc.*, 517 F. Supp. 948, 958 (S.D. Ohio 1981) (quoting G. Aksen, *American Arbitration Accession Arrives in the Age of Aquarius: United States Implements United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, 3 Sw. U. L. Rev. 1, 11 (1971)) (internal quotation marks omitted). Cubic does not dispute that all arbitration appeals have been exhausted here. The award has thus "become binding," and Article V(1)(e) does not apply.[6]

**[12]** In sum, neither the public policy defense nor the finality defense applies. The district court thus properly granted the Ministry's petition for confirmation of the ICC's award.

## II.

**[13]** Cubic contends the district court's judgment is not a "money judgment" — and thus is not subject to postjudgment

---

[6]Cubic argues that the award was not binding at the time of the district court's decision because (a) the award had not yet been confirmed, (b) an unconfirmed award has the legal effect of a contract between the parties, (c) a party's performance under a contract can be excused when performance has become impracticable and (d) performance is impracticable here because it is prohibited by "a domestic or foreign governmental regulation" in the form of U.S. regulations barring the payment of the award to Iran without a specific license. Restatement (Second) of Contracts § 264 (1981). This argument rests on a misunderstanding of Article V(1)(e), which imposes a finality requirement rather than incorporating common law excuses for nonperformance of a contract.

interest — because it does not specify the dollar amount of the arbitration award.[7] The governing statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). We have not previously defined the term "money judgment." The Third Circuit has done so, however, and we find its definition persuasive.

**[14]** Under this definition, a money judgment consists of two elements: "(1) an identification of the parties for and against whom judgment is being entered, and (2) a *definite* and *certain* designation of the amount which plaintiff is owed by defendant." *Penn Terra Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267, 275 (3d Cir. 1984) (defining the term "money judgment" for purposes of former Bankruptcy Code § 362(b)(5)); *see also Eaves v. Cnty. of Cape May*, 239 F.3d 527, 533 (3d Cir. 2001) (extending *Penn Terra*'s definition to § 1961(a)); *cf. In re Haugen*, 998 F.2d 1442, 1448 (8th Cir. 1993) (employing a similar definition).

**[15]** In *EEOC v. Gurnee Inns, Inc.*, 956 F.2d 146 (7th Cir. 1992), the district court ordered the defendant to pay specified sums to a number of employees, "less appropriate payroll deductions." *Id.* at 147. The Seventh Circuit rejected the defendant's argument that this was not a money judgment, stating: "the awards did not lose their character as sums certain simply because they were subject to the mechanical task of computing the payroll deductions." *Id.* at 149. Here, although the judgment does not spell out the amount of the ICC's award, a definite and certain designation of the amount that Cubic owes the Ministry is readily discernible by looking to the arbitration award itself. As the district court recognized, the ICC ordered "Cubic to pay Iran $2,808,591 with simple

---

[7]The judgment merely confirmed the arbitration award — stating "IT IS ORDERED AND ADJUDGED plaintiff's petition to confirm foreign arbitral award is granted." It does not specify the dollar amount of the award.

interest of 12% per annum from September 24, 1991 until May 5, 1997," and "to reimburse Iran $60,000 which was advanced by Iran" for the costs of arbitration. The district court confirmed this award without modification. The judgment therefore satisfies both elements of a money judgment.

**[16]** Cubic argues in the alternative that postjudgment interest should be tolled because Cubic has been prevented, through no fault of its own, from paying the judgment after it was confirmed by the district court. This argument is foreclosed by the plain language of § 1961, which provides that "[i]nterest *shall* be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a) (emphasis added). This language is mandatory, not discretionary. *See Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995). The Ministry is therefore entitled to postjudgment interest.

## III.

In its cross appeal, the Ministry argues that the district court abused its discretion by denying the Ministry's motion for post-award, prejudgment interest covering the period following the ICC's final award in May 1997. The district court concluded it lacked authority to award prejudgment interest:

> According to the Ninth Circuit, a district court's "review of a foreign arbitration award is quite circumscribed," and, the district court has "little discretion." *Ministry of Defense of the Islamic Republic of Iran v. Gould*, 969 F.2d 764, 770 (9th Cir. 1992). The Convention does not provide for the award of interest by a district court, but rather only provides for the confirmation of the arbitral award. In this case, the Award does provide for some pre-judgment interest, and it is that which this Court confirmed. However, Iran can point to no binding authority under which this Court would be authorized to award

interest in addition to that already awarded by the ICC. Neither the Convention, Congress' implementation of that Convention under 9 U.S.C. § [§ ] 200-208, nor binding case law authorize[s] the award of pre-judgment interest by a district court reviewing an arbitral award under the Convention.

We agree with the Ministry that the district court erred.

[17] The Second and Eleventh Circuits have held that post-award, prejudgment interest is available in an action to confirm an arbitration award under the New York Convention. *See Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1446-47 (11th Cir. 1998); *Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.*, 737 F.2d 150, 153-54 (2d Cir. 1984).[8] We find their reasoning persuasive.

First, "[w]hether to award prejudgment interest in cases arising under federal law has in the absence of a statutory directive been placed in the sound discretion of the district courts." *Waterside Ocean Navigation*, 737 F.2d at 153 (alteration in original) (quoting *Lodges 743 & 1746, Int'l Ass'n of Machinists v. United Aircraft Corp.*, 534 F.2d 422, 446 (2d Cir. 1975)) (internal quotation marks omitted); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1550 (9th Cir. 1989) ("[C]ourts may allow prejudgment interest even though the governing statute is silent."). This general rule reflects the widely accepted, remedial purpose of prejudgment interest — which is to "compensat[e] the injured party for the loss of the use of money he would otherwise have had." *Frank Music*, 886 F.2d at 1550.

Second, nothing in the federal statutes implementing the Convention, or in the Convention itself, reveals any intention on the part of Congress or the contracting states to preclude post-award, prejudgment interest. "[T]he Convention is silent

---

[8]We are not aware of any contrary authority.

on the question of pre-judgment interest." *Waterside Ocean Navigation*, 737 F.2d at 154.

Third, although a court's review of an arbitration award is limited, nothing in the Convention or the implementing statutes restricts the court's jurisdiction over collateral issues such as prejudgment interest. To be sure, a court's review of the award itself is minimal: the Convention requires a court to "confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Judicial review *of the award* is therefore " 'quite circumscribed' " — "[r]ather than review the merits of the underlying arbitration, we review de novo only whether the party established a defense under the Convention." *China Nat'l Metal Prods. Imp./Exp. Co. v. Apex Digital, Inc.*, 379 F.3d 796, 799 (9th Cir. 2004) (quoting *Gould*, 969 F.2d at 770). Actions under the Convention, however, "arise under the laws and treaties of the United States." 9 U.S.C. § 203. Thus, as in other federal question cases, whether to award prejudgment interest falls within the district court's discretion.

Fourth, in the absence of authority to grant post-award, prejudgment interest, the losing party in the arbitration has "an incentive . . . to withhold payment" — a result contrary to the purposes of the Convention. *Nat'l Oil Corp.*, 733 F. Supp. at 821.

[18] For these reasons, we hold that federal law allows a district court to award post-award, prejudgment interest in actions under the New York Convention.

The district court's discretion to award prejudgment interest, of course, must be exercised in a manner consistent with the underlying arbitration award. A court may not award prejudgment interest when the arbitration tribunal has determined that such interest is not available. Here, however, the ICC awarded pre-award interest from 1991 through the date of the

ICC's final award in May 1997, and was silent on whether the Ministry should recover post-award interest. The ICC therefore left this matter unresolved.

**[19]** Accordingly, we vacate the district court's denial of the Ministry's motion for prejudgment interest and remand for a determination whether, under the circumstances of this case, the Ministry is entitled to post-award, prejudgment interest. We express no opinion as to whether interest should be required or, if so, at what rate.

## IV.

The Ministry also argues that the district court abused its discretion when it denied the Ministry's motion for attorney's fees based on what it contends was Cubic's wilful bad faith in failing to abide by the ICC's award.

As in the case of prejudgment interest, the district court denied the request for attorney's fees because it concluded that it lacked the authority to award them. The court noted that the Federal Rules of Civil Procedure require a motion for attorney's fees to "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." Fed. R. Civ. P. 54(d)(2). The court recognized that case law permits an award of attorney's fees in a proceeding to confirm a *domestic* arbitration award, but said that "[n]either the Convention, Congress' implementation of that Convention under 9 U.S.C. § [§ ] 200-208, nor binding case law, authorize[s] the award of attorney's fees by a district court reviewing an arbitral award under the Convention."

**[20]** It is well settled, however, that even absent express statutory authority, federal courts have authority to award attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. *See Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983). "[A]n unjustified

refusal to abide by an arbitrator's award," moreover, "may equate an act taken in bad faith, vexatiously or for oppressive reasons." *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc.*, 84 F.3d 1186, 1192 (9th Cir. 1996) (alteration in original) (quoting *Int'l Union of Petroleum & Indus. Workers*, 707 F.2d at 428) (internal quotation marks omitted). Nothing in the New York Convention, or the federal statutes implementing it, expressly or impliedly negates this authority. As we have noted, actions under the Convention "arise under the laws and treaties of the United States." 9 U.S.C. § 203. Accordingly, we hold that federal law permits an award of attorney's fees in an action under the Convention, as it does in other federal question cases.[9]

**[21]** Because the district court did not believe it had such authority, it did not address the Ministry's allegations that Cubic unjustifiably refused to abide by the ICC's award. As in the case of prejudgment interest, we remand the request for attorney's fees to the district court for appropriate proceedings. We express no opinion as to whether such fees are warranted.

## CONCLUSION

We affirm the district court's confirmation of the ICC's award. We hold that the district court's judgment is subject to postjudgment interest. We vacate denial of the Ministry's motion for post-award, prejudgment interest and attorney's fees, and remand for reconsideration of the Ministry's motion.

---

[9]Cubic argues in the alternative that even if attorney's fees can be awarded in an action to confirm an international arbitration award, fees should not be awarded here because the ICC declined to award attorney's fees. The ICC, applying the loser-pays provision in the parties' contracts, did not award fees because there was no prevailing party in the arbitration proceedings. The ICC did not address whether fees could be awarded in a future confirmation proceeding based on an alleged unjustified failure by one party to abide by the terms of the award. Cubic's argument is therefore without merit.

The Ministry's motion to strike portions of Cubic's brief is denied. Each party shall bear its own costs on appeal.

**AFFIRMED IN PART, VACATED IN PART AND REMANDED.**