11-5201-cv
Agility Pub. Warehousing Co. K.S.C. v. Supreme Foodservice GmbH

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 6th day of September, two thousand twelve.

PRESENT:  RALPH K. WINTER,
            REENA RAGGI,
            DEBRA ANN LIVINGSTON,
              *Circuit Judges.*

------------------------------------------------------------------------

AGILITY PUBLIC WAREHOUSING CO. K.S.C.,
PROFESSIONAL CONTRACT ADMINISTRATORS,
INC.,

        *Petitioners-Appellees*,

        v.                         No. 11-5201-cv

SUPREME FOODSERVICE GMBH,
        *Respondent-Appellant*.[*]

------------------------------------------------------------------------

APPEARING FOR APPELLANT:      ROBERT L. BEGLEITER, Schlam Stone & Dolan LLP, New York, New York (Gary J. Malone, Constantine Cannon LLP, New York, New York, *on the brief*).

APPEARING FOR APPELLEES:      ALDEN L. ATKINS (Steven R. Paradise, Michael R. Charness, Adrianne L. Goins, Bryan

---

[*] The Clerk of Court is directed to amend the official caption as shown above.

T. Bunting, Crystal N. Y'Barbo, *on the brief*), Vinson & Elkins LLP, Washington, D.C.

Appeal from a judgment of the United States District Court for the Southern District of New York (Victor Marrero, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on December 30, 2011, is AFFIRMED.

Respondent Supreme Foodservice GmbH ("Supreme") appeals from a judgment confirming a $41 million arbitral award in favor of petitioners Agility Public Warehousing Co. K.S.C. and Professional Contract Administrators, Inc. (collectively, "Agility"). "In reviewing a district court's decision to confirm an arbitral award, we review findings of fact for clear error and conclusions of law de novo." Idea Nuova, Inc. v. GM Licensing Grp., Inc., 617 F.3d 177, 180 (2d Cir. 2010). In applying that standard here, we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.      Waiver

As a preliminary matter, Agility argues that Supreme waived the right to challenge enforcement of the arbitral award. The district court correctly rejected this argument as foreclosed by our precedent, specifically Hoeft v. MVL Group, Inc., 343 F.3d 57, 64–65 (2d Cir. 2003) (holding that parties may not, by private agreement, relieve federal courts of obligation to review arbitration awards prior to confirmation), overruled on other grounds by Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576 (2008), which also binds this court,

see United States v. Jass, 569 F.3d 47, 58 (2d Cir. 2009) (recognizing that panel is bound by prior decisions of court unless and until reversed en banc or by Supreme Court); see also Schwartz v. Merrill Lynch & Co., 665 F.3d 444, 451 (2d Cir. 2011) (following Hoeft to extent not overruled by Hall Street Associates).

2.     New York Convention

   a.     Applicability

Insofar as Agility questions application to this case of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention" or "Convention"), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T. S. 38, it appears to have waived this argument by failing to raise it in the district court, see In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 255 n.8 (2d Cir. 2011). Indeed, Agility conceded below that this enforcement proceeding is "governed by the New York Convention and the enforcement provisions of the Federal Arbitration Act." Pet'rs' Mem. in Opp'n to Mot. to Vacate Arbitration Awards at 7, Agility Pub. Warehousing Co. K.S.C. v. Supreme Foodservice GmbH, No. 11-cv-7375-VM (S.D.N.Y. Dec. 19, 2011), ECF No. 30 (emphasis added). In any event, the argument is not persuasive.

The Convention specifies that it applies to "arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." New York Convention art. I(1); see Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 18 (2d Cir. 1997). "[A]wards 'not considered as domestic' denotes awards which are subject

3

to the Convention not because made abroad, but because [1] made within the legal framework of another country, e.g., pronounced in accordance with foreign law[,] or [2] involving parties domiciled or having their principal place of business outside the enforcing jurisdiction." Bergesen v. Joseph Muller Corp., 710 F.2d 928, 932 (2d Cir. 1983); accord Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d at 19; see also Jain v. de Méré, 51 F.3d 686, 689 (7th Cir. 1995) ("[A]ny commercial arbitral agreement, unless it is between two United States citizens, involves property located in the United States, and has no reasonable relationship with one or more foreign states, falls under the Convention."). Because Supreme is a Swiss company, the Convention plainly applies here.

b. Application

Given "the strong public policy in favor of international arbitration, review of arbitral awards under the New York Convention is very limited in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 90 (2d Cir. 2005) (internal citation, quotation marks, and ellipsis omitted). Thus, we have held that "a district court, upon petition by a party to a qualifying arbitral award, 'shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the . . . Convention.'" Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 405 (2d Cir. 2009) (quoting 9 U.S.C. § 207). This means that a party opposing enforcement of an arbitral award bears the heavy burden

4

of proving that one of the specified grounds for refusal to recognize or enforce the award applies. See Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d at 90.

Here, Supreme relies on just one of the grounds for refusal specified in the Convention: that "recognition or enforcement of the award would be contrary to the public policy of [the] country" in which relief is sought. New York Convention art. V(2)(b) (emphasis added). We have repeatedly held that "Article V(2)(b) must be construed very narrowly to encompass only those circumstances where enforcement would violate our most basic notions of morality and justice." Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d at 411 (emphasis added) (internal quotation marks omitted). Accordingly, the defense is frequently invoked but rarely successful, particularly in view of the strong United States policy favoring arbitration. See id. at 410; see also Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc., 665 F.3d 1091, 1097 (9th Cir. 2011) (noting that invocation of Article V(2)(b) has rarely been successful).

Supreme's arguments in this respect stem from the fact that certain Agility witnesses refused to testify, citing the indictment, then recently unsealed, of Agility Public Warehousing Co. KSC. Supreme contends that confirmation of the award under these circumstances contravenes New York public policy mandating that a plaintiff may not "claim affirmative relief and at the same time refuse to disclose information bearing upon his right to maintain his action." Prink v. Rockefeller Ctr., Inc., 48 N.Y.2d 309, 316, 422 N.Y.S.2d

5

911, 915 (1979) (involving plaintiff's invocation of spousal privilege). This argument misunderstands the Convention's Article V(2)(b) ground for refusal, which is concerned with violations of basic, fundamental national policies, see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 638 (1985); Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd., 191 F.3d 194, 197 n.3 (2d Cir. 1999); Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d 310, 315–16 (2d Cir. 1998); Parsons & Whittemore Overseas Co., v. Societe Generale de L'Industrie du Papier (RAKTA), 508 F.2d 969, 973–74 (2d Cir. 1974), rather than with the policies of particular states within this country. In Telenor Mobile Communications AS v. Storm LLC, 584 F.3d 396, we considered and rejected with little comment an argument that an arbitral award should be vacated as "contrary to New York public policy . . . [against] forc[ing] a party to comply with an arbitral award that will cause it to violate a foreign judgment." Id. at 410. The very brief treatment of this issue in Telenor cannot fairly be read to imply that Article V(2)(b) permits vacatur of an arbitration award because it contravenes a particular state's public policy. Thus, even if Supreme could demonstrate that the district court (and the arbitrators) failed properly to apply New York procedural law mandating dismissal of claims whenever a plaintiff (or a principal of a plaintiff corporation) invokes a privilege and refuses to testify, this would not be sufficient to carry Supreme's heavy burden of proving that recognition or enforcement of the arbitral award would violate this nation's basic notions of morality and justice. See id. at 411.

Further, we need not decide whether any basic, fundamental United States public policy mandates dismissal of claims when a plaintiff refuses to testify, because here, the situation that Supreme complains of was largely, if not entirely, "of [Supreme's] own making." Id. at 410. Supreme not only opposed Agility's request to postpone arbitral proceedings until the completion of criminal proceedings, but also expressly invited the arbitrators to draw adverse inferences from Agility executives' refusal to testify as an alternative to outright dismissal. Under such circumstances, the arbitrators' decision to draw adverse inferences from the executives' absence rather than to dismiss Supreme's claims did not violate "basic notions of morality and justice." Id. at 411; see generally In re Sims, 534 F.3d 117, 132 (2d Cir. 2008) (discussing waiver of testimonial privileges and stating that, while "waiver may be implied in circumstances where it is called for in the interests of fairness," the question "whether fairness requires disclosure is best decided on a case by case basis, and depends primarily on the specific context in which the privilege is asserted" (brackets, internal quotation marks, and ellipsis omitted)).

Insofar as Supreme invokes due process, the argument sounds not in the FAA or Article V(1)(a) of the New York Convention, but rather in Article V(1)(b) of the Convention, which permits recognition or enforcement of an award to be avoided where "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case" (emphasis added). See also Iran Aircraft Indus. v. Avco Corp., 980 F.2d 141, 145 (2d Cir.

7

1992) (recognizing that "Article V(1)(b) essentially sanctions the application of the forum state's standards of due process" (internal quotation marks omitted)). Supreme cannot complain that the arbitrators' decision to draw negative inferences in favor of Supreme from the executives' refusal to testify rather than to dismiss Agility's claims, an approach invited by Supreme, violated American standards of due process.[1]

2.    FAA

Article V(1)(e) of the New York Convention "allow[s] a court in the country under whose law the arbitration was conducted to apply domestic arbitral law, in this case the [Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16], to a motion to set aside or vacate that arbitral award." Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d at 21. Supreme here invokes two of four grounds for vacatur set forth in the FAA: (1) "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced," 9 U.S.C. § 10(a)(3) (emphasis added); and (2) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made," id. § 10(a)(4). Supreme further relies on our precedents recognizing that a "court may set aside an arbitration award if it was rendered in manifest

_____

[1] We are aware of no cases holding that, as a matter of due process, dismissal is the only permissible remedy whenever a plaintiff refuses to testify in a civil case. Supreme relies exclusively on cases applying New York procedural law.

disregard of the law." Schwartz v. Merrill Lynch & Co., 665 F.3d at 451.[2] Supreme maintains that the arbitrators' decision to draw negative inferences from Agility executives' refusal to testify rather than to dismiss Agility's claims violated each of these grounds.

Insofar as this claim is pursued under § 10(a)(3), it fails because we have construed "misconduct" under that section to reference only violations of "fundamental fairness." Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997). For the same reasons we conclude that the arbitrators' challenged conduct, invited by Supreme, did not violate basic notions of morality and justice or due process, we likewise conclude that it did not violate fundamental fairness.

We have also consistently accorded the narrowest reading to the FAA's authorization to vacate awards pursuant to § 10(a)(4) for arbitrators' exceeding their authority. This is particularly so when that provision is "invoked in the context of the arbitrators' alleged failure to correctly decide a question which all concede to have been properly submitted in the first instance." DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 824 (2d Cir. 1997) (internal quotation marks omitted). Here, Supreme does not question the arbitrators' authority to decide whether Agility was owed post-termination airlift services fees. It disputes only the legal rulings that informed the arbitrators' decision to award such fees to

---

[2] In Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 130 S. Ct. 1758, 1768 n.3 (2010), the Supreme Court expressly declined to decide whether an arbitral award may be vacated under this standard. As such, we are bound to follow our precedents that recognize manifest disregard of the law as a permissible ground for vacatur of an arbitral award. See, e.g., Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d at 407.

9

Agility. This contention is not cognizable under § 10(a)(4), see id., and thus, we need not discuss it further.

Supreme argues further that in declining to dismiss Agility's claims due to its executives' refusal to testify, the arbitrators acted with manifest disregard of New York law. The manifest disregard standard is a "judicial gloss on the specific grounds for vacatur of arbitration awards" set forth in the FAA. T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 340 (2d Cir. 2010) (internal quotation marks omitted). Although the concept's boundaries "are not precisely defined . . . the term clearly means more than error or misunderstanding with respect to the law." Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d at 407 (internal quotation marks omitted). In short, "[a] mere demonstration that an arbitration panel made the wrong call on the law," which is the essence of Supreme's argument, "does not show manifest disregard; the award should be enforced if there is a barely colorable justification for the outcome reached." Id. (internal quotation marks and ellipsis omitted; emphasis in original).

In following this rule here, we are mindful of "three components to . . . application of the manifest disregard standard": (1) whether the law allegedly disregarded was clear and explicitly applicable to the matter in dispute; (2) whether the law was in fact improperly applied and led to an erroneous outcome; and (3) whether the arbitrators had actual, subjective knowledge of the law's existence and applicability. Id. at 408. Even assuming that the identified New York procedural law's import was clear and applicable to this

10

arbitration, <u>but see</u> <u>Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie</u> <u>du Papier (RAKTA)</u>, 508 F.2d at 975 (noting that, by agreeing to arbitration, parties ordinarily relinquish courtroom procedural rights); J.A. 123 (agreeing to arbitration "under the Rules of the American Arbitration Association"), and even assuming that this law was in fact improperly applied, Supreme has shown, at most, a mere error in the application of state law, rather than knowing disregard of applicable law. Indeed, no other conclusion is possible where Supreme invited the drawing of adverse inferences as an alternative to dismissal.

3.    <u>Conclusion</u>

For the foregoing reasons, the district court's judgment is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

11